**Anthony ALONGI, Appellant**

**v.**

**Michelle RICCI; Administrator, New Jersey State Prison; Attorney General of the State of New Jersey.**

**No. 06–4419.**

United States Court of Appeals, Third Circuit.

Argued Feb. 1, 2010.

Opinion Filed: Feb. 25, 2010.

Anthony Alongi, Trenton, NJ, pro se.

Samuel J. Marzarella, Esq., William K. Meighan, Esq., Office of County Prosecu-

tor Ocean County, Toms River, NJ, for Michelle Ricci; Administrator, New Jersey State Prison; Attorney General of the State of New Jersey.

BEFORE: MCKEE, HARDIMAN, Circuit Judges and POLLAK * District Judge.

PER CURIAM.

Anthony Alongi appeals the district court's denial of the habeas petition he filed pursuant to 28 U.S.C. § 2254. In his petition, Alongi argued that the government failed to fulfill its obligations to disclose exculpatory evidence, that the evidence was not sufficient to support his convictions for murder or felony murder, that the trial court unconstitutionally denied his request to represent himself at trial, and that his trial counsel was constitutionally ineffective. For the reasons that follow, we conclude that the trial court violated Alongi's Sixth Amendment right by improperly denying his request to represent himself at trial. We will therefore remand this case to the district court with instructions to grant a conditional writ forthwith ordering Alongi's release unless the State of New Jersey retries him within 90 days of the date of the accompanying order.[1]

Before we discuss why relief is appropriate here, we think it important to note that the district court did not grant a COA on the issue of whether Alongi had been unconstitutionally denied the right to represent himself. However, after Alongi filed his *pro se* appeal in this court, we appointed *Amicus* counsel. The order appointing *Amicus* provided: "In addition to any other issues amicus curiae wishes to raise, amicus curiae should address the following issue: whether Alongi's right to self-representation under the Sixth Amendment was violated by the trial court. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Buhl v. Cooksey*, 233 F.3d 783 (3d Cir.2000)." Because we specifically requested briefing on this issue, we now *nostra sponte* broaden the COA to include it.[2]

---

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Because we grant Alongi's petition on the basis of the trial court's denial of Alongi's right to self-representation, we do not consider the other grounds Alongi asserts for relief. In particular, we do not consider his claim of insufficiency of the evidence. That claim has as its predicate our decision last year, setting aside the murder and felony murder convictions of Alongi's co-defendant, Paul Kamienski, as based on insufficient evidence. *Kamienski v. Hendricks*, 332 Fed.Appx. 740 (3d Cir.2009). It necessarily follows, so Alongi contends, that his convictions for the same crimes are, for the same reason, flawed. It is possible that Alongi is correct, but we would note that, in considering Kamienski's habeas petition, we did not perceive Kamienski's and Alongi's cases as totally congruent. In *Kamienski v. Hendricks* we observed that "[t]here was more testimony at trial regarding evidence linking Alongi ... to the crimes." *Id.* at 744. However, that observation is not enti-

tled to any weight in addressing Alongi's petition, since, as we noted in *Kamienski v. Hendricks*, "only Kamienski's appeal is before us." *Id.* at 744 n. 9. (In confining our attention to Alongi's Sixth Amendment claim, we are, of course, aware that a reversal based on trial error has consequences differing from the consequences of a reversal based on insufficiency of the evidence. *See Vogel v. Pennsylvania*, 790 F.2d 368 (3d Cir.1986) (a new trial may follow if the conviction is vacated for trial error, but is barred by double jeopardy if the evidence is found to be insufficient).)

2. *See* Third Circuit L.A.R. 22.1(b) "If the district court grants a certificate of appealability as to only some issues, the court of appeals will not consider uncertified issues unless appellant first seeks, and the court of appeals grants, certification of additional issues.... Notwithstanding the above, the merits panel may expand the certificate of appealability as required in the circumstances of a particular case." *See also Villot v. Varner*, 373 F.3d 327, 337 (3d Cir.2004) ("We may not consider

## I. Background

Inasmuch as we are writing primarily for the parties who are familiar with the history of this case, we need only briefly set forth the factual and procedural history of this appeal.

In 1987, a New Jersey grand jury indicted Joseph Marsieno, Paul Kamienski, and Anthony Alongi for the 1983 murders of Henry ("Nick") and Barbara DeTournay, a married couple from whom Marsieno and Alongi had arranged to purchase a large amount of cocaine. At trial, the government introduced evidence that Marsieno killed the DeTournays rather than pay for the cocaine. The government also introduced evidence in support of its theory that Kamienski and Alongi acted as Marsieno's accomplices in committing these murders. All three defendants were subsequently convicted of first degree murder, felony murder, and conspiracy to possess cocaine with the intent to distribute.

At trial, Alongi was represented by Jack Russell, a privately-retained attorney. Prior to retaining Russell, Alongi had applied for representation by a public defender. However, the public defender's office found Alongi ineligible for its services. App. 309. Alongi then arranged for Russell to represent him at trial, although Alongi apparently paid Russell for only a small portion of his services. App. 330–31.

Before jury selection, Alongi changed his mind about wanting Russell as his counsel and so informed Russell. Thereafter, Russell told the trial court: "[a]s a result of a conversation I had yesterday by telephone with Mr. Alongi, it is Mr. Alongi's position and request that I be discharged and Mr. Alongi be permitted to represent himself." App. 330. The court responded by asking Alongi for the basis of his request. Alongi answered:

> For lack of interest in the case, Your Honor. And I have had many motions put in, and I never heard nothing. I don't see the man. He don't come—he come visit me, get this together, and mostly lack of interest.
>
> And I can understand Mr. Russell's lack of interest because of the money situation; but otherwise, I feel I'm the master of my own fate, Your Honor. I'm not going to make nobody else hurt me.

App. 330–31. The trial court next asked Alongi numerous questions about his ability to effectively represent himself. The judge inquired into whether Alongi was a member of the Bar, how far he went in school, what he did for a living, and whether he had previously represented himself in a trial. App. 331–32. Finally, the court asked Russell whether he was prepared to proceed with the trial as planned. App. 332.

After making these inquiries, the court denied Alongi's request to represent himself. The court explained:

> Application for substitution of Mr. Alongi as counsel pro se is addressed to the sound discretion of the Trial Court....[3] I am to consider whether allowing the request could interfere with the orderly trial of the case, whether the defendant is competent to conduct his own defense and to assure himself of a fair trial, consider the gravity of the offense, the

issues on appeal that are not within the scope of the certificate of appealability.... However, the merits panel may expand the scope of the COA beyond the scope announced by the motions panel.... [T]he merits panel may expand the COA *sua sponte.*' ").

**3.** It appears that the trial court confused the abuse of discretion standard which would normally govern a request to substitute counsel, with the standard governing invocation of the constitutional right to proceed *pro se,* which, as explained below, is not subject to the court's discretion.

nature and seriousness of the charges, and whether, in the interest of justice, counsel's representation is necessary, and whether there appear [to be] any other facts or circumstances which would interfere with a fair and orderly presentation of the case.

I have reviewed the nature of the charges.... They, of course, [are] first degree murder, among other charges. I have been afforded, through counsel, ... some access to the nature and circumstances of the proofs, which are complicated.

I have been given witness lists ... which are extensive and suggest a good deal of preparation is required.

I have had the opportunity to conference with counsel ... I am satisfied that in all respects, Mr. Russell is prepared, has prepared the case and is in a position to provide an effective defense for Mr. Alongi.

I am not satisfied that Mr. Alongi, by reason of his background, and given the nature and circumstances of these charges, is in a position adequately and effectively to assure himself a fair trial.

Under those circumstances, the application for substitution is denied.

App. 332–34.

Alongi argues that the trial court's actions were a violation of his Sixth Amendment right to represent himself, and that we must therefore vacate his conviction. We agree.

## II. The Right to Self–Representation at Trial

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that the Sixth Amendment right to counsel includes the right to proceed *without* counsel. Although "courts [must] indulge every reasonable presumption" against a waiver of counsel, *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (internal citations and quotation marks omitted), once a defendant "clearly and unequivocally" declares her/his desire to proceed pro se, the trial court's role is quite limited. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. The court must confirm that the accused "knowingly and intelligently" forgoes the substantial benefits of counsel, and it must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *See id.* (internal citations and quotation marks omitted). Once it is clear that the defendant's eyes are open, the court must permit the defendant to represent her/himself, and any additional inquiry into the defendant's fitness to do so is as irrelevant as it is improper.

The right to proceed without counsel therefore operates quite differently than the right to proceed with counsel. The latter attaches automatically and may be waived only by an affirmative, knowing, and intelligent waiver. The former does not attach unless it is clearly asserted. Although the two rights are opposite sides of the same Sixth Amendment coin, they require very different inquiries.

Alongi argues that we must vacate his conviction because the trial court improperly denied him the right to represent himself. The state makes three arguments in response. The state argues that the claim is not properly before us because Alongi failed to exhaust the claim on direct appeal in the state courts of New Jersey,[4]

---

4. The state also argues that Alongi failed to raise this claim in his habeas petition. This is not an issue of "exhaustion" as the district court is obviously not a state court. Nonethe- less, if Alongi did not raise this claim in his petition, we certainly could not consider it. We think it clear, however, that Alongi did raise this claim in his habeas petition.

that Alongi did not "clearly and unequivocally" assert his right to represent himself, and that the trial court's actions were not contrary to clearly established federal law. We reject each of these arguments.

## A. Alongi Exhausted His *Faretta* claim

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that … *the applicant has exhausted the remedies available in the courts of the State*[.] " 28 U.S.C. § 2254(b)(1) (emphasis added). In order for a claim to be exhausted, it must have been fairly presented to the state courts through "one complete round of the State's established appellate review process." *Nara v. Frank,* 488 F.3d 187, 197 (3d Cir.2007) (internal citations and quotation marks omitted). Exhaustion under AEDPA requires that state prisoners give state courts a "fair opportunity to act on their claims." *O'Sullivan v. Boerckel,* 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). To do so, a petitioner need only "describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional

claim." *Davis v. Silva,* 511 F.3d 1005, 1009 (9th Cir.2008) (internal citations and quotation marks omitted). Moreover, *pro se* submissions are held to less stringent standards than we expect of attorneys trained in the law and legal drafting. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

█ The state argues that Alongi failed to fairly present his *Faretta* claim to the New Jersey Appellate Division in the *pro se* brief he submitted on direct appeal. According to the state, Alongi's argument in that brief that he was denied his Sixth Amendment right to counsel addressed only the more familiar Sixth Amendment claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and did not fairly present any claim under *Faretta.*

If Alongi's *pro se* brief had discussed only *Strickland,* we would agree with the state's argument; however, Alongi's submission was not restricted to *Strickland.* Alongi entitled the first point of his *pro se* brief "Ineffective Assistance of Counsel Through Government Interference." In this section, Alongi discussed numerous factors which he contended amounted to the denial of counsel under the Sixth Amendment. Alongi did argue that his trial counsel, Russell, was ineffective under the standard set forth by *Strickland.*

---

Alongi's habeas petition plainly states that Alongi requests relief based on the denial of his "right to proceed pro se." App. 70. It continues: "Petitioner asked for counsel to be relieved and for permission to represent himself. Permission was denied." *Id.* Although the counsel Alongi retained to draft the brief in support of his habeas petition at the district court level failed to argue this point, Alongi submitted to the district court a lengthy supplemental *pro se* brief, clarifying that he was also asserting a claim based on the trial court's denial of his right to proceed *pro se.* App. 184–95. Alongi specifically referred to

*Faretta* at least four times in this supplemental brief, and objected to the denial of his right to proceed *pro se* at least as many times. *Id.*

The district court noted in its opinion that it had considered the arguments Alongi made in his supplemental submissions. The district court failed to discern from these submissions, however, that in addition to his claim of ineffective assistance of counsel, Alongi was also raising a claim under *Faretta.* The district court's failure to recognize the *Faretta* claim does not alter the fact that the claim was before the court.

However, Alongi *also* argued that the trial court violated his right to counsel by denying his request to proceed *pro se*. Alongi stated: "[i]n evaluating actual, and or constructive [denial of the right to counsel]. We simply look at the first day of trial. See this appendix, transcript of October 18, 1988, pages 7 through 11. *When appellant was denied to travel pro-se, and Mr. Russell was forced on him.*" App. 237 (emphasis added). Alongi noted at various other places in his brief that Russell had been forced upon him. He also cited to those pages of the trial transcript in which his request to represent himself was denied, and copies of those pages were attached to his brief.

We therefore conclude that Alongi exhausted his *Faretta* claim. Alongi presented the operative facts of his claim to the Appellate Division by citing to and providing it with the relevant pages of the trial transcript, and Alongi presented the claim's legal basis to the Appellate Division by stating that he was denied the right to "travel pro-se" and referencing the Sixth Amendment. We know of no case that would support the proposition that Alongi's efforts, especially in light of his *pro se* status, were not sufficient to inform the Appellate Division that he was raising a Faretta claim.

### B. Alongi Clearly and Unequivocally Asserted His Right

The state secondly argues that Alongi never clearly and unequivocally expressed a desire to represent himself at trial. As noted above, the right to proceed without counsel only attaches when it has been clearly and unequivocally expressed. However, the record of the proceedings before the trial court establishes that Alongi did clearly and unequivocally express his desire to proceed *pro se*.

The thrust of the state's argument to the contrary is two-fold. It argues that Alongi's request cannot be read as clear and unequivocal both because Alongi had previously asked to be represented by counsel, and because Alongi's request was motivated by his dissatisfaction with Russell, his retained counsel. Neither of these arguments are convincing.

First, we do not think that, under these circumstances, the fact that Alongi once desired counsel made his ultimate request to proceed *pro se* unclear or equivocal. Alongi consistently requested counsel; however, he did not request Russell. Rather, he requested representation by the public defender's office. That office denied his request, and only then did Alongi retain Russell. After observing Russell's performance in pre-trial matters, Alongi decided that he would rather represent himself than proceed with Russell as his attorney. Alongi's desire to do so was then clearly and unequivocally communicated to the court by both Russell and Alongi. Alongi's request does not become less clear and unequivocal simply because he had previously accepted representation by counsel, or requested it of the public defender's office. That background is certainly relevant to our analysis but it is not conclusive.

Additionally, the fact that Alongi was motivated to proceed *pro se* because he was dissatisfied with retained counsel is of only passing consequence, at most, under *Faretta*. In *Buhl v. Cooksey*, 233 F.3d 783 (3d Cir.2000), we explained that almost all requests for *pro se* representation will arise from dissatisfaction with trial counsel. "It is the rare defendant who will ask to proceed *pro se* even though he/she is thoroughly delighted with counsel's representation, ability, and preparation." *Id.* at 794. Thus, that a defendant wishes to proceed without representation because s/he is dissatisfied with that representation is not usually relevant to whether that

defendant's request is clear and unequivocal. In fact, Faretta was also motivated by his concerns about the quality of his representation. Faretta stated that "he did not want to be represented by the public defender because he believed that that office was very loaded down with a heavy case load." *Faretta*, 422 U.S. at 807, 95 S.Ct. 2525 (internal quotation marks and punctuation omitted).

This record establishes that here, as in *Faretta*, Alongi's dissatisfaction with defense counsel did not diminish the fact that he clearly asserted that he wanted to represent himself at trial, rather than proceed with counsel. Alongi's request, though inartful, was sufficient to convey that desire to the trial judge, and the judge clearly understood that Alongi was asking to forego counsel and proceed *pro se*. As we stated in *Buhl*, a "defendant need not recite some talismanic formula hoping to open the eyes and ears of the court to his request to invoke his/her Sixth Amendment rights under *Faretta*." 233 F.3d at 792 (internal citations and quotations marks omitted). We accordingly conclude that Alongi did assert his Sixth Amendment right to self-representation.

## C. The Trial Court's *Faretta* Colloquy Was Contrary to Clearly Established Federal Law

█ Finally, the state argues that even if Alongi clearly and unequivocally assert-ed his right to represent himself, the trial court's actions in denying that request were not contrary to or an unreasonable application of clearly established federal law under AEDPA.[5]

The state argues that the trial court's *Faretta* colloquy was not contrary to or an unreasonable application of clearly established federal law on self-representation. According to the state, the trial court properly assessed in its colloquy the "background, experience, and conduct" of Alongi, factors that a court is required to consider by *Johnson*. The state maintains that the trial court's inquiry was not about whether Alongi had the "legal technical knowledge" to represent himself, but rather, whether "his background and experience in consideration of all the circumstances leading up to October 18, 2009 would justify a waiver of counsel." Appellee's Br. 26. The state argues that the trial court's decision, in light of these factors, to deny Alongi's request cannot be contrary to or an unreasonable application of clearly established federal law.

The state's argument is simply untenable. The trial court's handling of Alongi's request to represent himself was woefully inadequate under *Faretta*. The trial court entirely misstated the applicable standard, and incorrectly asserted that the decision to permit a defendant to proceed *pro se* fell within the court's discretion. In deny-

---

**5.** Under AEDPA, "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision unreasonably applies clearly established federal law if it correctly identifies the "governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407, 120 S.Ct. 1495.

ing Alongi's request, the trial court never once mentioned *Faretta* or its sole requirement that the waiver of the right to counsel be knowing and voluntary. In addition, the court did nothing to appraise Alongi of the risks of self representation.

The state is correct that *Johnson* directs courts to consider a defendant's "background, experience, and conduct" in their colloquies. 304 U.S. at 464, 58 S.Ct. 1019. Inquiry into these factors, however, must be directed towards determining whether the defendant's waiver is knowing and voluntary, not towards whether the defendant has "justified" his request, or is capable of representing her/himself. Here, the trial court focused solely on whether Alongi would be a skillful advocate. That is directly contrary to *Faretta*'s explanation that a defendant's "technical legal knowledge" is simply not relevant to "an assessment of his knowing exercise of the right to defend himself." 422 U.S. at 836, 95 S.Ct. 2525.

We are not oblivious to the concerns that motivated the trial court to deny Alongi's request. The trial court's concern that Alongi receive a fair trial is understandable and would otherwise be commendable. Nevertheless, as *Faretta* explains, a defendant's request to waive the right to counsel and proceed *pro se* cannot be denied because the court believes that the defendant's choice is ill-advised. Such a choice is almost always ill-advised. Nevertheless, as the Court explained in *Faretta:* "although [a defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." 422 U.S. at 834, 95 S.Ct. 2525 (internal citations and quotation marks omitted).

We therefore conclude that the trial court's failure to conduct an appropriate *Faretta* colloquy was contrary to clearly established federal law.

### III. Conclusion

For reasons we have discussed, the trial court's denial of Alongi's Sixth Amendment right to represent himself does not survive scrutiny even under AEDPA's deferential standard. We will therefore remand this case to the district court with instructions to grant a conditional writ ordering Alongi's release unless the State of New Jersey retries him within 90 days of the date of the accompanying order.